**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **RICKY PATTERSON, # B-79037,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17-cv-1067-MJR** |
| | ) | |
| **D. JOHNSON,** | ) | |
| **WARDEN LAMB,** | ) | |
| **M. McCARTHY,** | ) | |
| **SGT. CASBURN,** | ) | |
| **L. McCARTHY,** | ) | |
| **STIBBRR,** | ) | |
| **HENTON,** | ) | |
| **E. COOPER,** | ) | |
| **GOODRUM,** | ) | |
| **BUCKLES,** | ) | |
| **SUMMER,** | ) | |
| **C/O GIVENS,** | ) | |
| **J. BALDWIN,** | ) | |
| **DAVE WHITE,** | ) | |
| **and COUNSELOR RAY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff is currently incarcerated at Hill Correctional Center ("Hill"). He brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 while he was confined at Lawrence Correctional Center ("Lawrence"), where his claims arose. Plaintiff raises a number of claims, including improper opening and confiscation of his legal mail, the issuance of false disciplinary tickets against him, and retaliation including repeated threats of serious bodily harm and sexual assault. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive

threshold review under § 1915A. Further, some of the surviving claims are not properly joined in the same action, and shall be severed into 2 new cases.

## The Complaint

Plaintiff's statement of claim spans 25 pages, and often does not present the events underlying his claims in chronological order. (Doc. 1, pp. 9-33). Plaintiff also includes 62 pages of exhibits. (Doc. 1-1).

According to Plaintiff, when he was transferred to Lawrence on November 4, 2016, he had an ongoing criminal appeal as well as a pending civil legal matter. Most of his personal property consisted of legal documents, prompting correctional officers to comment to each other that Plaintiff might sue them. (Doc. 1, p. 9). Officers would make remarks and question Plaintiff after he received phone calls from attorneys or judges, at times refusing to let Plaintiff return to his housing area until he disclosed who he had spoken to. Plaintiff wrote grievances over this behavior, but his complaints were not answered. *Id.* In late December 2016, Plaintiff's lawyer had to call the prison so that Plaintiff could access a notary for documents he needed to sign and return. When Plaintiff placed the documents in the mail to his attorney, the envelope was never delivered, which led to more phone calls and additional court dates. (Doc. 1, p. 10).

Against that backdrop, in the first week of January, Plaintiff received an attorney call followed by a judge call the next day. After the phone call with the judge, C/O Buckles brought an opened letter from Plaintiff's attorney to his cell. Plaintiff asked Buckles why he had opened the envelope; he responded that "we gone [sic] make sure you don't sue nobody here." (Doc. 1, p. 10).

A few days later, Plaintiff received a disciplinary ticket written by Buckles on January 10, 2017, charging him with unauthorized movement for allegedly being in the dayroom at the

wrong time. *Id.* Plaintiff was able to get the ticket expunged because he had documentation that he was in the commissary at the time Buckles claimed he was in the dayroom. Plaintiff asserts that Buckles wrote the false ticket because he was unable to provoke Plaintiff into a physical reaction by intimidating him during and after the mail-opening incident. (Doc. 1, p. 10).

On January 12, 2017, C/O Summer delivered a legal letter from the "Fourth District Appellate Court" to Plaintiff's cell.[1] *Id.* While Plaintiff watched, Summer went through the opened envelope and removed a "key part" of the documents as well as the stamped return envelope which Plaintiff's lawyer instructed him to use to return the signed receipt she had enclosed. (Doc. 1, pp. 9-10). Plaintiff protested, but Summer and another officer told him he was not allowed to have the envelope. Plaintiff asked to speak to a Lieutenant about the matter.

Lieutenant Stibbrr[2] reiterated that Plaintiff could not have the envelope. (Doc. 1, p. 11). Showing Stibbrr the letter, Plaintiff tried to explain that he needed the transcripts rather than the envelope, but Stibbrr began yelling and waving his arms in the air, then stepped forward, running into Plaintiff in an apparent attempt to get him to move. Plaintiff turned and started back to his cell, but Stibbrr grabbed Plaintiff's arm. Stibbrr and another officer took Plaintiff to segregation. Later that day (January 12, 2017), Stibbrr wrote a ticket claiming that Plaintiff squeezed his biceps, preventing him from moving his arms, and then shoved him. (Doc. 1, p. 10). Plaintiff denies this, noting that he was holding the letter in one hand and a pen in the other during the verbal confrontation with Stibbrr, and never squeezed the officer's biceps or held his arms down. The incident would have been captured on surveillance video. (Doc. 1, pp. 10-11).

Lt. Henton and C/O Cooper served as the hearing panel for Stibbrr's disciplinary ticket

---

[1] While Plaintiff states the letter came from the Appellate Court, his attached exhibit reveals that the letter was actually from Plaintiff's appellate attorney at the Office of the State Appellate Defender, Fourth District, and contained court transcripts and a receipt for Plaintiff to sign and return. (Doc. 1-1, p. 2).
[2] Plaintiff's exhibits include a summary report of disciplinary proceedings relating to this incident, which reflects that the officer involved is named "Steber." (Doc. 1-1, p. 5).

against Plaintiff for assault and intimidation/threat. (Doc. 1, pp. 11-12; Doc. 1-1, pp. 5-6; 25). Plaintiff complains that the composition of the hearing panel violated the Illinois Administrative Code because neither officer represented the counseling staff, and this meant that the panel was not impartial. (Doc. 1, pp. 11-13). He also notes that Stibbrr, who wrote the disciplinary report, is the superior officer of Henton and Cooper, indicating that they would be unlikely to question Stibbrr's version of events. (Doc. 1, p. 16).

After Plaintiff was served with the disciplinary report, on January 13, 2017, he requested Givens (hearing officer) to review the surveillance video, which would prove that Plaintiff never touched or grabbed Stibbrr. (Doc. 1, p. 14). Plaintiff also gave a grievance to Counselor Ray and submitted a written statement to the adjustment committee – both requesting that the surveillance video be preserved, reviewed by the investigating officer, and presented to the adjustment committee. However, Givens (who had a mandatory duty to inspect physical evidence) failed to review the video or report on it to the hearing committee. (Doc. 1, p. 15).

Henton and Cooper found Plaintiff guilty on January 16, 2017, without reviewing the surveillance video. They based their finding solely on Stibbrr's report. (Doc. 1, pp. 15-17). Plaintiff raises due process claims based on these events. Plaintiff was punished with 3 months in segregation, as well as 3 months of C-grade, commissary restriction, and 6 months of restriction on contact visits. (Doc. 1, pp. 13, 15; Doc. 1-1, pp. 5-6, 25). He also states that he lost 3 months of good conduct credits, however, this is not reflected in the final summary report Plaintiff included with the Complaint. (Doc. 1-1, pp. 5-6, 25). Plaintiff further was labeled a "staff assaulter," which caused him to be targeted by officers for harassment and threats.

Plaintiff filed grievances over the composition of the hearing panel and their handling of the disciplinary procedure. Stibbr tore the original grievances in half and tossed them into

Plaintiff's segregation cell, taunting him. (Doc. 1, p. 13). Plaintiff mailed copies of his grievances to his family to send to the Administrative Review Board ("ARB"). White (of the ARB) "rubber-stamped" the denial of the grievances, as did Warden Lamb and IDOC Director Baldwin. (Doc. 1, pp. 12, 17). Plaintiff complains that the grievance process at Lawrence is non-functional, as Counselor Ray allows grievances to end up in the hands of staff and fails to answer them, and Lamb, White, Smith[3] (of the ARB), and Baldwin fail to remedy problems that are brought to their attention. (Doc. 1, pp. 14, 17).

Plaintiff asserts that he has been subjected to retaliation by numerous Lawrence officials for filing grievances and engaging in litigation, and because he was wrongly classified as a "staff assaulter" after Stibbrr's false disciplinary report. (Doc. 1, pp. 18-31).

Plaintiff repeats the allegations regarding the false disciplinary ticket issued by Buckles on January 10, 2017, and asserts that Stibbrr was motivated to write the false January 12, 2017, ticket because Plaintiff's challenge to the Buckles ticket proved that it was fraudulent, and because Plaintiff exercised his right to file grievances and pursue litigation. (Doc. 1, pp. 20-22).

On February 20, 2017, while Plaintiff was in segregation, Sgt. Casburn attempted to place a cellmate with him (Williams) who was seriously mentally ill. (Doc. 1, p. 23). Williams had been yelling and kicking his cell door for 2 days straight, had attempted suicide, and was known to throw feces at guards and smear feces on his own body and face. At the time, there were empty cells on the gallery and many inmates (including Williams) were in cells by themselves. Plaintiff asserts that Casburn planned to house Williams with him so that Plaintiff would be harmed or would be forced to harm Williams, and that this was another act of retaliation because Plaintiff had been labeled as a "staff assaulter." (Doc. 1, pp. 24-25). Plaintiff refused to accept Williams as a cellmate. Casburn issued him a ticket for disobeying a direct

[3] Smith is not named as a Defendant in the Complaint (Doc. 1, pp. 1-5).

order, and Plaintiff got another 30 days in segregation. (Doc. 1, p. 25).

Plaintiff was subjected to other ill treatment during his time in segregation. In early January, after guards became aware of Plaintiff's false "staff assaulter" label, Plaintiff began to receive breakfast trays that contained obvious spit on the food. (Doc. 1, pp. 24-25). Plaintiff's grievance on the issue disappeared. He stopped eating breakfast for the rest of his time in segregation. In February, Plaintiff was left in leg shackles for so long that his feet went numb. Another time he was left in handcuffs in his cell for nearly an hour for no reason. (Doc. 1, p. 24). On February 8, 2017, guards purposely handcuffed Plaintiff so tightly that his wrists and hands went numb and left him that way in his cell for at least an hour. *Id.*

Plaintiff was released from segregation on April 27, 2017. (Doc. 1, p. 26). He was placed back into the same cell house where Stibbrr was the unit commander and where C/O Johnson, who had verbally harassed Plaintiff on several occasions starting in November 2016, regularly worked.[4] (Doc. 1, pp. 19, 26). Plaintiff believes that this placement itself was retaliatory, but he does not indicate what official made that placement decision. (Doc. 1, p. 28). Stibbrr verbally harassed Plaintiff, which Plaintiff attributes to his grievance activity. (Doc. 1, p. 27). C/O Johnson's verbal harassment, racial slurs, and threats to "kick [Plaintiff's] ass" continued through April-June 2017, during which time Plaintiff wrote 4 grievances about this conduct. (Doc. 1, p. 27). The grievances were never addressed.

On approximately July 11, 2017, C/O Goodrum cursed and yelled at Plaintiff, then told him he knew who Plaintiff was and what he did to "the Lieutenant," then stated he did not care how many grievances Plaintiff writes, "you bitched up once and we're going to get you." (Doc. 1, p. 28). Plaintiff had never before spoken to Goodrum. Plaintiff complained to M. McCarthy

---

[4] In November 2016, Plaintiff had complained to L. McCarthy about Johnson's continuing racist remarks, but L. McCarthy did nothing. (Doc. 1, p. 19).

about Goodrum's threat, to no avail.

On July 20, 2017, Johnson pulled Plaintiff out of the chow line after accusing him of holding up the line (Plaintiff states that another officer halted the line and he did nothing improper). (Doc. 1, p. 29). While escorting Plaintiff back to his unit, Johnson said, "you think you can just write me up and nothing will happen," and "I'm going to string your black ass up by the balls and stick them grievances up your ass." (Doc. 1, p. 29; *see also* p. 26). At some point, Johnson threatened to kill Plaintiff. (Doc. 1, p. 26). This terrified Plaintiff because he had witnessed Johnson head-butt another inmate 3 days before. Johnson repeated the threat later in the day, saying he would be working overtime the next few days, and Plaintiff's "ass will be found stuffed full of grievances and dangling in the shower." (Doc. 1, pp. 29-30). Plaintiff reported the incident and the hanging threat to L. McCarthy, who defended Johnson and then remarked, "Grievances – you still trying to sue people Patterson – hell, I should help him tie the knot." (Doc. 1, p. 30). After this conversation, Johnson confronted Plaintiff on the way back to his cell, taunted him, and threatened to make Plaintiff his "little bitch" while shoving him and making kissing noises. *Id.* Plaintiff called twice to the anti-sexual-violence hotline, and requested to be placed in protective custody ("PC"). (Doc. 1, pp. 26, 30).

After this incident, Plaintiff was charged with another allegedly fraudulent infraction (apparently written by D. Johnson). (Doc. 1, p. 26). The adjustment committee, composed of Cooper and T. Stuck (who is not named as a Defendant) gave Plaintiff a choice of either dropping his PC request, or face criminal charges for assault by the Lawrence County prosecutor. (Doc. 1, pp. 26, 31). Plaintiff did not drop the PC request. The Complaint does not disclose whether Plaintiff was criminally charged, or whether he was found guilty of the disciplinary ticket or punished.

Also on July 20, 2017, (after Johnson threatened to string Plaintiff up by his genitals) Plaintiff went to the visiting area to see his family, expecting to have a normal contact visit. Lamb had lifted his contact visit restriction some weeks earlier. (Doc. 1, p. 31). However, L. McCarthy and other officers informed Plaintiff that because he was classified as a "staff assaulter," they would not let him have a contact visit. Plaintiff protested that Lamb had removed the visit restriction, but the officers told him he would "never receive any privileges in Lawrence" because he had put his hands on staff. *Id.* Under threat of segregation, Plaintiff accepted the non-contact visit. The next day, Plaintiff's family confirmed from a counselor that Lamb had previously lifted the restriction and the contact visit should have been allowed.

As relief, Plaintiff seeks an injunction ordering Defendants to place him in protective custody outside of Lawrence. (Doc. 1, p. 33). He also seeks damages.

### Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** First Amendment and Fourteenth Amendment claims against Buckles, for intentionally opening and reading Plaintiff's mail from his attorney outside Plaintiff's presence;

> **Count 2:** Fourteenth Amendment due process claim against Buckles, for falsely charging Plaintiff with a disciplinary violation on January 10, 2017;

> **Count 3:** First Amendment and Fourteenth Amendment claims against Summer, for opening correspondence from Plaintiff's attorney and confiscating transcripts and a stamped return envelope contained in it;

**Count 4:** Fourteenth Amendment due process claim against Stibbrr for issuing Plaintiff a false disciplinary ticket on January 12, 2017; against Givens for failing to produce exculpatory evidence (surveillance video) requested by Plaintiff; and against Henton and Cooper for failing to review or consider the video evidence before finding Plaintiff guilty and punishing him with segregation;

**Count 5:** Claims against Lamb, White, Baldwin, and Ray for failing to reverse the disciplinary action described in Count 4; failing to remedy other matters raised in Plaintiff's grievances (such as alleged harassment and retaliation); and mishandling grievances;

**Count 6:** First Amendment claim against Stibbrr for writing the January 12, 2017, false disciplinary ticket in retaliation for Plaintiff's successful challenge to the fraudulent Buckles ticket, and for Plaintiff's grievance and litigation activity;

**Count 7:** First Amendment retaliation claim against Casburn for attempting to place a mentally ill inmate with Plaintiff on February 20, 2017, because Plaintiff had been labeled a "staff assaulter;"

**Count 8:** Eighth Amendment cruel and unusual punishment claim against Stibbrr, Goodrum, and M. McCarthy for subjecting Plaintiff to verbal harassment after April 27, 2017, and in July 2017;

**Count 9:** First Amendment retaliation claim against Johnson, for threatening Plaintiff with bodily harm, sexual assault, and death on July 20, 2017, and issuing him a fraudulent disciplinary ticket, after Plaintiff filed grievances against Johnson;

**Count 10:** Eighth Amendment cruel and unusual punishment claim against Johnson, for threatening Plaintiff with bodily harm, sexual assault, and death on July 20, 2017, and against L. McCarthy, for repeating the threat of harm to Plaintiff;

**Count 11:** Claim against Cooper for threatening Plaintiff with criminal charges in the disciplinary hearing on Johnson's July 2017 ticket, if Plaintiff did not give up his protective custody request;

**Count 12:** First Amendment retaliation claim against L. McCarthy, for depriving Plaintiff of a contact visit with family on July 20, 2017, because Plaintiff had been labeled as a "staff assaulter."

Counts 1, 3, 4, 6, 9, and 10 survive review under § 1915A. Counts 2, 5, 7, 8, 11, and 12

shall be dismissed for failure to state a claim upon which relief may be granted.

Furthermore, it is apparent that the surviving claims are not properly joined in a single action.  *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007).  The Seventh Circuit directs that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.  *George*, 507 F.3d at 607 (citing 28 U.S.C. § 1915(b), (g)).  Pursuant to Federal Rules of Civil Procedure 20 and 21, the claims in Counts 4 and 6 (involving Stibbrr, Givens, Henton, and Cooper) shall be severed into a new action, as will the claims in Counts 9 and 10 (against Johnson and L. McCarthy).  Plaintiff shall be assessed additional filing fees for the 2 severed cases.  Counts 1 and 3 (involving Buckles and Summer) shall remain in this action.

### Count 1 – Buckles – Opening and Reading Legal Mail

Under the First Amendment, prisoners have the right to send and receive mail, but prison official may inspect incoming and outgoing mail for contraband.  *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999).  Mail from an attorney who is representing a prisoner is entitled to greater protection, in order to avoid interference with the prisoner's right to access the courts.  Incoming mail from an attorney that is clearly marked as legal or privileged mail must be opened only in the presence of the prisoner.  *See Wolff*, 418 U.S. at 577; *Rowe*, 196 F.3d at 782.  Further, prison officials' practice of *reading* correspondence between an inmate and his lawyer "raise[s] serious issues under the Sixth Amendment (and its application, by interpretation of the Fourteenth Amendment, to state criminal defendants), which guarantees a right to counsel in criminal cases."  *Guajardo-Palma v. Martinson*, 622 F.3d 801, 803, 805 (7th Cir. 2010).  A prisoner who raises a claim based on interference with legal mail must demonstrate some resulting hindrance to his ability to pursue a legal claim or defense.  *See*

*Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005).  However, "proof of a *practice* of reading a prisoner's correspondence with his lawyer should ordinarily be sufficient to demonstrate hindrance."  *Guajardo-Palma*, 622 F.3d at 805 (emphasis in original).

Here, Plaintiff alleges that on January 10, 2017, Buckles delivered a letter to Plaintiff from his attorney, which had already been opened.  When Plaintiff questioned Buckles, he stated that he had opened the envelope to "make sure" that Plaintiff would not sue anybody at Lawrence.  (Doc. 1, p. 10).  Buckles' comment indicates that he purposely opened Plaintiff's letter outside Plaintiff's presence, and that he read the letter to see whether Plaintiff was suing any Lawrence officials. Such conduct may have violated Plaintiff's First Amendment rights.  If the correspondence was in reference to Plaintiff's pending criminal appeal, his Fourteenth Amendment rights may also be implicated.  At this stage, the claims against Buckles in **Count 1** warrant further review, and shall proceed in this action.

## Dismissal of Count 2 – Due Process – Buckles

To the extent that Plaintiff seeks to assert a due process claim against Buckles for issuing the fraudulent disciplinary ticket on January 10, 2017, no due process violation occurred.

the Seventh Circuit held in *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which he is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed).  The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan*, 747 F.2d at 1140, but determined that the procedural

protections outlined in *Wolff* provided the appropriate safeguard against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

Plaintiff does not discuss the disciplinary hearing other than to say that he succeeded in proving Buckles' charge to be false, by presenting written proof that he was in the commissary at the time Buckles accused him of being in the dayroom without authorization. This outcome demonstrates that Plaintiff received due process, and the ticket was expunged. Accordingly, Plaintiff cannot sustain a constitutional claim against Buckles based on the filing of a false charge. The due process claim in **Count 2** shall therefore be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Count 3 – Summer – Opening and Confiscation of Legal Mail

The precedent outlined under Count 1 above also applies to this claim. Summer may not have opened Plaintiff's letter from his appellate attorney before bringing it to Plaintiff's cell. But he apparently went beyond inspecting the contents for contraband when he confiscated the transcript which was intended for Plaintiff, as well as the stamped envelope which the lawyer instructed Plaintiff to use in order to return the receipt documenting that he had received the material. (Doc. 1, p. 9-10). Summer's confiscation of Plaintiff's transcript may have hindered Plaintiff's prosecution of his criminal appeal, though the Complaint does not discuss that point.

Further factual development is appropriate in order to determine whether Summer's actions resulted in a violation of Plaintiff's First and/or Fourteenth Amendment rights. **Count 3** shall therefore proceed in this action.

### Count 4 – Due Process – Stibbrr, Givens, Henton, & Cooper

The allegedly false disciplinary ticket issued by Stibbrr on January 12, 2017, resulted in a guilty finding by Henton and Cooper, and Plaintiff spent 3 months in segregation as a result.

Although Plaintiff stated that his punishment included the loss of good conduct credits as well, the Court concludes, based on the final report of the adjustment committee, that he did not actually lose any good time. (Doc. 1-1, pp. 5-6, 25). As such, this claim would not be barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). *See also Edwards v. Balisok*, 520 U.S. 641 (1997) (§ 1983 claim for damages is barred if it would imply the invalidity of a disciplinary decision revoking good-conduct credit, unless disciplinary action has been reversed).

As noted under Count 2, prisoners are entitled to certain minimal procedural protections in disciplinary proceedings involving the loss of good time, confinement in disciplinary segregation, or some comparable deprivation of a constitutionally protected liberty interest. *Wolff v. McDonnell*, 418 U.S. 539, 556-572 (1974).

> *Wolff* required that inmates facing disciplinary charges for misconduct be accorded [1] 24 hours' advance written notice of the charges against them; [2] a right to call witnesses and present documentary evidence in defense, unless doing so would jeopardize institutional safety or correctional goals; [3] the aid of a staff member or inmate in presenting a defense, provided the inmate is illiterate or the issues complex; [4] an impartial tribunal; and [5] a written statement of reasons relied on by the tribunal. 418 U.S. at 563-572.

*Hewitt v. Helms*, 459 U.S. 460, 466 n.3 (1983). Further, due process requires that the findings of the disciplinary tribunal must be supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007).

In Plaintiff's case, he asserts that he was denied the opportunity to present documentary evidence in his defense (the surveillance videotape), even though he requested this evidence in advance of the hearing. Givens failed to review the tape or provide it to Henton and Cooper, and Henton and Cooper ruled on the ticket without viewing the tape. This suggests that Plaintiff was

deprived of one of the *Wolff* due process protections.

Plaintiff also challenges the impartiality of Henton and Cooper. Notably, the failure to follow the Illinois Administrative Code's requirement as to the makeup of the panel does not establish a constitutional due process violation. A federal court does not enforce state law or regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). Contrary to Plaintiff's assertion, the administrative code does not establish a constitutionally protected liberty interest. However, Plaintiff's claim that Stibbrr, who authored the disciplinary ticket, was the supervising officer of Henton and Cooper may suggest a lack of impartiality on their part in determining Plaintiff's guilt or innocence on Stibbrr's charges.

At this stage, the Complaint sufficiently alleges that procedural due process requirements were not followed in adjudicating the January 12, 2017, disciplinary ticket. However, more is needed to state a claim for deprivation of a liberty interest without due process. Even if the hearing violated the *Wolff* procedural standards, a prisoner cannot maintain a constitutional claim for deprivation of a liberty interest without due process unless the conditions of the disciplinary segregation imposed an "atypical and significant hardship" on the inmate when compared to the conditions he would have faced in nondisciplinary segregation. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997).

In order to assess whether a plaintiff was subjected to atypical and significant hardships, courts consider both the duration of the punitive segregation term, and the conditions of that confinement. *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary, and the claim would be subject to dismissal. *See Lekas v. Briley*,

405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement"). Only if the disciplinary segregation period was sufficiently long *and* if the conditions of confinement were unusually harsh, may an inmate maintain a civil rights claim for deprivation of a liberty interest without due process.

Here, Plaintiff was punished with 3 months in segregation as a result of the January 12, 2017 ticket. This 90-day period may be long enough to trigger an inquiry into the conditions of Plaintiff's confinement in disciplinary segregation, although it is a relatively short time in the context of the 50-year sentence that Plaintiff is serving.[5] *See Thomas*, 130 F.3d at 761 (70 days in segregation is relatively short compared to total 12-year sentence). Nonetheless, Plaintiff includes allegations that he was treated harshly during his time in segregation – including being served food contaminated with spit, and being placed in leg shackles and handcuffs which caused his feet and hands to go numb, on more than one occasion.[6] At this early stage, Plaintiff states a cognizable claim for deprivation of a liberty interest without due process.

Accordingly, Plaintiff may proceed with the due process claim in **Count 4** against Stibbrr, Givens, Henton, and Cooper. However, this claim shall be severed into a separate action along with Count 6 against Stibbrr.

---

[5] *See* Website of the Illinois Department of Corrections, Offender Search page, http://www.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx (Last visited November 30, 2017).
[6] The Court did not designate the food contamination or shackling incidents as separate claims in this case, because Plaintiff did not identify the individual officers who took those actions.

## Dismissal of Count 5 – Grievances/Failure to Intervene

Plaintiff's claims against Counselor Ray, Warden Lamb, ARB member White, and IDOC Director Baldwin seek to impose liability on them for failing to properly handle or respond to Plaintiff's grievances, and/or failing to remedy the problems that Plaintiff complained about in his grievances. However, none of Plaintiff's factual allegations suggest that Ray, Lamb, White, or Baldwin were personally involved in the incidents of legal mail interference, bringing or adjudicating false disciplinary charges, retaliation and harassment, or issuing threats against Plaintiff. These Defendants only became aware of these problems (if at all) after other prison officials allegedly mistreated Plaintiff or violated his rights.

In order to be held individually liable for a civil rights violation, "a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). A defendant's role in responding to prisoner grievances does not constitute "personal involvement" in the constitutional deprivation that gave rise to the grievance. Additionally, the fact that Lamb and Baldwin held positions of authority over the officials who allegedly violated Plaintiff's rights cannot be the basis for liability in a civil rights action, where the doctrine of *respondeat superior* (supervisory liability) does not apply. *Sanville*, 266 F.3d at 740.

The alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Thus, the failure to investigate or respond to Plaintiff's grievances, or any other action or

inaction with regard to the grievance procedure on the part of Ray, Lamb, White, or Baldwin, will not support an independent constitutional claim. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli*, 81 F.3d at 1430. The Constitution requires no procedure at all, and the failure of state prison officials to follow their own grievance procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

For these reasons, the claims in **Count 5** against Ray, Lamb, White, and Baldwin for failing to take action in response to Plaintiff's grievances, shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Count 6 – Retaliation – Stibbrr

This claim also references the January 12, 2017, disciplinary ticket issued by Stibbrr when Plaintiff allegedly grabbed Stibbrr's arms and shoved him. In addition to the due process claim in Count 4 based on that disciplinary action, Plaintiff asserts that Stibbr issued the fabricated ticket in retaliation for Plaintiff's successful challenge to the January 10, 2017, ticket where Buckles falsely accused Plaintiff of unauthorized movement.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). At issue in a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the

retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Here, Plaintiff claims that his protected First Amendment activity (bringing a challenge to a disciplinary ticket, which Plaintiff proved to be false) was closely followed by Stibbrr's action of issuing Plaintiff another fabricated disciplinary charge. Plaintiff asserts that Stibbrr was aware that Plaintiff beat the earlier ticket, and was motivated by that incident to charge Plaintiff with another disciplinary infraction. Plaintiff certainly experienced adverse consequences from Stibbrr's January 12 disciplinary charge, which would deter an ordinary person from asserting his First Amendment rights in the future. At this stage, the retaliation claim against Stibbrr in **Count 6** merits further review.

The claim in Count 6 shall be severed into a separate action along with the claim in Count 4, which involves Stibbrr and relates to the same disciplinary charge.

### Dismissal of Count 7 – Retaliation – Casburn

The incident giving rise to the retaliation claim against Casburn arose on February 20, 2017, over a month after Plaintiff was placed in segregation as punishment for the disciplinary charge brought by Stibbrr (described in Counts 4 and 6). Plaintiff explains that as a result of the guilty finding in that disciplinary action, he was labeled as a "staff assaulter." He further claims that various officials became aware of the "staff assaulter" designation, and therefore targeted him for ill treatment. Plaintiff alleges that Casburn's attempt to place a mentally ill, disruptive inmate into Plaintiff's segregation cell as his cellmate was one of the incidents that followed from the "staff assaulter" designation.

As explained under Count 6, an inmate may maintain a retaliation claim if he was subjected to some adverse action as a result of engaging in protected First Amendment activity – for example, filing a grievance, raising a verbal complaint, or filing a lawsuit over prison conditions, staff conduct, or a disciplinary action. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). A retaliatory motive may be inferred from the chronology of events leading up to the adverse/retaliatory action. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000).

Casburn's attempt to house the objectionable and possibly dangerous cellmate with Plaintiff could qualify as an "adverse action" to support a retaliation claim. However, Plaintiff explains that Casburn targeted him because he had been labeled as a "staff assaulter," not because of Plaintiff's grievance or litigation activity. Even if the "staff assaulter" label was wrongly applied to Plaintiff, that classification does not constitute First Amendment speech or activity that must be present to support a retaliation claim. To the contrary, assaulting a prison staff member is outlawed by prison rules. The Court at this stage accepts Plaintiff's assertion that he was falsely accused of the staff assault. However, even assuming he was innocent, being charged with a conduct violation is not a "protected activity" that would support a First Amendment claim. The same is true of the "staff assaulter" accusation; this label (or any other prison classification) is not a protected First Amendment activity on the part of the prisoner.

Adverse action against Plaintiff that was motivated by his designation as a "staff assaulter" does not amount to unconstitutional retaliation against Plaintiff for First Amendment activity. For this reason, the retaliation claim in **Count 7** against Casburn for attempting to give Plaintiff a mentally ill cellmate shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

Plaintiff incurred another adverse consequence because he refused to accept the cellmate, when he was punished with an additional month of segregation for disobeying an order. However, there is no basis to claim that this conduct violation was false, because Plaintiff admits that he rejected the cellmate assignment. Therefore, the Complaint does not reveal any basis for a due process claim based on this incident.

### Dismissal of Count 8 – Verbal Harassment

Plaintiff describes being the target of verbal harassment on a number of occasions, some of it apparently triggered by his possession of legal property, and some of it racial in nature. This claim encompasses incidents of cursing and other verbal harassment directed at Plaintiff by Stibbrr in April 2017, and by Goodrum in July 2017. Lt. M. McCarthy is included with this claim because Plaintiff complained to him about the incident with Goodrum. (Doc. 1, pp 19, 26-27). None of these incidents rose to the level of a constitutional violation, however.

> The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution. *See Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987); *accord Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir.), *clarified on rehearing*, 186 F.3d 633 (5th Cir. 1999). Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam) (Eighth Amendment); *Patton*, 822 F.2d at 700 (due process); *Williams*, 180 F.3d at 705-06 (equal protection). *See generally Shabazz v. Cole*, 69 F. Supp. 2d 177, 199-201 (D. Mass. 1999) (collecting cases).

*DeWalt v. Carter* 224 F.3d 607, 612 (7th Cir. 2000). *See also Dobbey v. Ill. Dep't of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009) ("harassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment").

Under this authority, Plaintiff cannot maintain a constitutional claim against Stibbr, Goodrum, or M. McCarthy based on their verbal harassment. **Count 8** shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Count 9 – Retaliation – Johnson

Plaintiff filed 4 grievances against Johnson in April-June 2017, complaining about Johnson's racial and other verbal harassment, and his threats to "kick [Plaintiff's] ass." (Doc. 1, p. 27). When Johnson pulled Plaintiff aside on July 20, 2017, he told Plaintiff, "you think you can just write me up and nothing will happen," before proceeding to tell Plaintiff that he was going to string him up and stick his grievances up his ass. (Doc. 1, pp. 26, 29). Soon after Johnson's repeated threats to harm or kill Plaintiff, Johnson charged Plaintiff with a fraudulent conduct violation for intimidation or threat, and insolence. (Doc. 1, p. 26). Plaintiff claims the charge was filed "to cover up the repeated retaliation." *Id.*

Johnson's escalating threats of harm and the allegedly false disciplinary charges followed Plaintiff's protected activity of filing grievances against Johnson. At this stage, Plaintiff's factual allegations support a retaliation claim against Johnson for the threats and false ticket. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009); *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000). Plaintiff may therefore proceed with the retaliation claim in **Count 9.** However, the claim in Count 9 shall proceed in a separate severed action along with the claim in Count 10.

## Count 10- Eighth Amendment – Johnson & L. McCarthy

In contrast to the verbal harassment described in Count 8, Johnson's harassment of Plaintiff arguably crossed the line into the realm of actionable cruel and unusual punishment. Johnson's verbal harassment and racial slurs from April into July 2017 included threats to beat Plaintiff. This behavior escalated on July 20, 2017, when Johnson confronted Plaintiff and threatened to hang him by his genitals and stick Plaintiff's grievances up his ass, and also threatened to kill Plaintiff. (Doc. 1, pp. 26, 29). Plaintiff took the threats seriously, because he had recently seen Johnson physically assault another inmate. Johnson repeated the hanging

threat later in the day, and Plaintiff feared for his life as a result. After Plaintiff reported Johnson's conduct to L. McCarthy, Johnson added to the threat by telling Plaintiff he would make Plaintiff his "bitch." That statement was accompanied by Johnson physically shoving Plaintiff and making kissing noises as he walked Plaintiff to his cell. Given the lack of response to Plaintiff's report of the threats, he was so concerned for his safety that he asked to be placed in protective custody.

Plaintiff reported Johnson's threats to L. McCarthy because he was in fear for his safety. Instead of taking any remedial action, McCarthy commented disparagingly on Plaintiff's grievance activity, and told Plaintiff that he "should help [Johnson] tie the knot." (Doc. 1, p. 30). With both officials threatening to harm him, Plaintiff felt himself to be at risk.

In some circumstances, a threat may rise to the level of cruel and unusual punishment. *Dobbey v. Ill. Dept. of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009). *See also Beal v. Foster*, 803 F.3d 356, 357-58 (7th Cir. 2015) (dismissal of Eighth Amendment claim based on harassment was premature, where plaintiff alleged psychological trauma to the extent of seeking mental health care; harassment was sexual in nature and included physical conduct beyond the verbal harassment). Courts must apply an objective standard to determine whether a particular threat, given all the circumstances, may amount to a constitutional violation. *Dobbey*, 574 F.3d at 445. The pertinent inquiry is whether a "reasonable" victim would fear for his or her life as a result of the threat; not whether the particular plaintiff experienced actual fear. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)).

In light of the repetition and escalation of Johnson's threats, coupled with McCarthy's additional threat and his unwillingness to intervene, Plaintiff may be able to meet the standard to

demonstrate an objectively serious threat that violated the Eighth Amendment. The claims against Johnson and L. McCarthy in **Count 10** may therefore proceed, in the new case to be severed from this action along with Count 9.

### Dismissal of Count 11 – Cooper

This claim is based on Cooper's participation on the adjustment committee that (on July 27, 2017) considered the allegedly false disciplinary report filed by Johnson on or about July 20, 2017 (see Count 9). (Doc. 1, p. 26). According to Plaintiff, Cooper and the other adjustment committee member threatened to have criminal charges filed against Plaintiff if he did not give up his request for protective custody. (Doc. 1, pp. 26, 31). Plaintiff states that he did not drop his protective custody request, but he gives no further information about the disciplinary proceedings. He does not indicate whether he was found guilty of the allegedly false charges or, if so, what sanctions he incurred. The Complaint includes no more information regarding the threatened criminal charges.

It is not clear what, if any, claim Plaintiff may be trying to pursue against Cooper based on this incident. There is too little information to assess whether Plaintiff's right to due process was violated in the disciplinary proceedings. Because Plaintiff does not further discuss the matter of the threatened criminal charge, there is no basis to conclude that this was anything more than an idle threat. Conceivably, there could be a retaliation claim based on these events, but the Complaint does not indicate that Cooper actually took any adverse action against Plaintiff because of Plaintiff's request for protective custody.

At this juncture, **Count 11** against Cooper, based on the events in connection with the July 27, 2017, disciplinary hearing, shall be dismissed without prejudice for failure to state a claim upon which relief may be granted. Plaintiff may re-plead this claim if he wishes to pursue

it further.

## Dismissal of Count 12 – Retaliation – L. McCarthy

Plaintiff characterizes L. McCarthy's refusal to allow him a contact visit with family on July 20, 2017, as retaliation against him based on his designation as a "staff assaulter." (Doc. 1, p. 31). Plaintiff does not connect the contact-visit denial with any other action on his part that might be characterized as protected First Amendment activity.

As discussed under Count 7, a retaliation claim cannot be premised on an inmate's classification as a "staff assaulter," even if that label was wrongly applied. Such a classification is not a protected action or activity on the part of the inmate who was given the label. For this reason, the retaliation claim against L. McCarthy in **Count 12** shall be dismissed without prejudice, for failure to state a claim upon which relief may be granted.

## Severance of Claims & Defendants

In addition to conducting the merits review under § 1915A, the Court must consider whether the surviving claims and parties may properly proceed in the same joint action, in consideration of Federal Rule of Civil Procedure 20. Under Rule 20(a)(2),[7] a "plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." Wright, Miller, & Kane, 7 Federal Practice & Procedure Civ. 3d § 1655 (West 2017); FED. R. CIV. P. 20(a)(2).

The claims in Counts 1 and 3 against Buckles and Summer for opening Plaintiff's legal correspondence arose from incidents 2 days apart, which arguably were 2 separate transactions

---

[7] Rule 20, which governs joinder of parties in a single action, must be satisfied before the Court turns to the question of whether claims are properly joined under Rule 18. *Intercon Research Assoc's, Ltd. v. Dresser Industries, Inc.*, 696 F.2d 53, 57 (7th Cir. 1982); Wright, Miller, & Kane, 7 Federal Practice & Procedure Civil 3d § 1655 (West 2017).

or occurrences.  As the claims present common legal questions, and may involve some overlapping factual questions, they shall be allowed to proceed together at this stage and shall remain in this original action.  However, further severance pursuant to Rule 20 may be appropriate as the case progresses.

The claims in Count 4 involving Stibbrr, Givens, Henton, and Cooper all relate to Stibbr's January 12, 2017, allegedly false disciplinary ticket and the hearing process that ensued. The retaliation claim in Count 6 against Stibbr arose from the same disciplinary charge and will involve common factual questions, thus Counts 4 and 6 are properly joined.  However, the incident underlying Counts 4 and 6 is distinct from the transactions and occurrences that gave rise to the other claims in the Complaint.

Count 9 against Johnson and Count 10 against Johnson and L. McCarthy both arose from incidents on July 20, 2017.  Counts 9 and 10 are factually intertwined with each other, but arose from distinct transactions/occurrences from the other 2 groups of claims.

Under Rule 20(a)(2) and *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), it would be improper for all the above claims, against distinct groups of Defendants, to proceed in the same action.  Accordingly, the claims in Counts 4 and 6 shall be severed into a new case, and Counts 9 and 10 shall be severed into a second new action.

## Pending Motions

Plaintiff's motions for recruitment of counsel (Docs. 3 & 12) shall be referred to the United States Magistrate Judge for further consideration in this action.

Along with the Complaint, Plaintiff filed a "Memorandum of law in support of motion for a preliminary injunction."  (Doc. 4).  This 35-page memorandum was docketed as a motion for preliminary injunction.    In it, Plaintiff seeks an order from this Court to place him in

protective custody in another institution outside of Lawrence, because of the threats of physical and sexual violence and the other alleged violations of his constitutional rights.

Notably, Plaintiff was transferred to Hill Correctional Center after he filed this action. Because Plaintiff is no longer an inmate at Lawrence, his motion seeking injunctive relief appears to now be moot, unless he can show "a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains here." *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)).

The threats of serious physical harm on which Plaintiff's motion rests are connected primarily to the claims that have been designated herein as Counts 9 and 10. (Doc. 4, pp. 1-9). Therefore, when the Clerk opens a new severed case for those claims against Johnson and L. McCarthy, the motion at Doc. 4 shall be transferred to that newly opened case for any further consideration that may be warranted. Doc. 4 shall be terminated on the docket of the instant case.

### Disposition

**COUNTS 2 and 5** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNTS 7, 8, 11, and 12** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

Defendants **LAMB, M. McCARTHY, CASBURN, GOODRUM, BALDWIN, WHITE,** and **RAY** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 20(a)(2), Plaintiff's due process and retaliation claims in **COUNTS 4 and 6**, and the retaliation

and Eighth Amendment claims in **COUNTS 9 and 10**, are **SEVERED** into 2 new cases. The new cases shall be:

**FIRST SEVERED CASE:** Claims against **DEFENDANTS STIBBRR, HENTON, COOPER, and GIVENS,** including Count 4 – Due Process, and Count 6 – Retaliation; and

**SECOND SEVERED CASE:** Claims against **JOHNSON and L. McCARTHY**, including Count 9 – Retaliation, and Count 10 – Cruel and Unusual Punishment.

In each new case, the Clerk is **DIRECTED** to file the following documents:

    (1)      This Memorandum and Order
    (2)      The Original Complaint (Doc. 1)
    (3)      Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)

In addition, the Clerk is **DIRECTED** to file the motion for preliminary injunction (Doc. 4) in the **SECOND SEVERED CASE** (with Counts 9 & 10). The Clerk shall **TERMINATE** the motion at Doc. 4 in this original case.

Plaintiff **will be responsible for an additional $350.00 filing fee** in each new severed case.

Because this Memorandum and Order contains the §1915A merits review of the severed Counts 4, 6, 9, and 10, service may be ordered without delay on Defendants Stibbrr, Henton, Cooper, and Givens in the first severed case, and on Johnson and L. McCarthy in the second severed case, as soon as the new cases are opened and the judge assignments are made.

**IT IS FURTHER ORDERED** that the ***only claims remaining in this action are COUNT 1 against Defendant BUCKLES, and COUNT 3 against Defendant SUMMER***, for opening and reading Plaintiff's legal correspondence, and (Count 3 only) confiscating Plaintiff's incoming legal documents. This case shall now be captioned as: **RICKY PATTERSON, Plaintiff, vs. BUCKLES, and SUMMER, Defendants.**

**IT IS FURTHER ORDERED** that Defendants **JOHNSON, L. McCARTHY, STIBBRR, HENTON, COOPER, and GIVENS** are **TERMINATED** from *this* action with prejudice.

As to **COUNTS 1 and 3**, which remain in the instant case, the Clerk of Court shall prepare for Defendants **BUCKLES** and **SUMMER:** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motions for recruitment of counsel (Docs. 3 & 12).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 5, 2017**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court